## UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| United States of America<br>v.<br><br>Jose David ESCATEL-VILLASENOR<br>*Defendant(s)* | )<br>)<br>)<br>)  Case No.  23-mj-182-STV<br>) |

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about October 19, 2023, in the State and District of Colorado, Jose David ESCATEL-VILLASENOR, did knowingly and intentionally possess with intent to distribute 40 grams and more of a mixture and substance containing a detectable amount of n-phenyl-n-[1-(2phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi).

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi) | Possession with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of fentanyl |

This criminal complaint is based on these facts:
See Affidavit attached hereto and herein incorporated by reference.

☒ Continued on attached sheet.

*s/Myshell Bolton*
*Complainant's signature*

Myshell Bolton, Special Agent, DEA
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: November 3, 2023

*Judge's signature*

City and state: Denver, Colorado    Hon. Scott T. Varholak, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Myshell Bolton, Special Agent with the Federal Drug Enforcement Administration (DEA), being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief.

## INTRODUCTION AND AGENT BACKGROUND

1. Your affiant has been a Special Agent (SA) with the DEA since March 2021. Your affiant is currently assigned to the Rocky Mountain Field Office of the Denver Division of the DEA, specifically to General Enforcement Group 1. Your affiant has participated in investigations involving organized crime, drug trafficking, and money laundering activities. From March 2021 to July 2021, your affiant received four months of training in narcotics investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. Prior to employment with the DEA, your affiant served five years from 2015 to 2020 as a Senior Investigator with the Aurora (Colorado) Police Department, working in the Background Investigations Unit. In 2020, your affiant earning the rank of Detective, assigned to the Gang & Robbery Investigation Unit and Economic Crimes Unit. Prior to serving with the Aurora Police Department, your affiant was a Commissioned Police Officer from 2007 to 2012 with the Grand Junction Police Department. From 2012 to 2014, your affiant was selected to serve as an Investigator for the agency's Street Crimes Unit, targeting street and midlevel narcotic trafficking cases.

2. My law enforcement experience includes, but is not limited to, conducting surveillance; interviewing subjects, targets, and witnesses; writing affidavits for and executing search warrants; issuing administrative subpoenas; analyzing phone records; and analyzing data derived from the use of pen registers, and trap and trace devices. Through training and

experience, your affiant is familiar with the methods and means used by individual gang members, drug traffickers, and drug trafficking organizations (DTOs) to purchase, transport, store, and distribute controlled substances. I am also familiar with how those individuals and organizations hide the often-substantial profits generated from their drug trafficking activities. Your affiant has experience in analyzing and interpreting drug codes and cryptic dialogue often used by drug traffickers, gangs, and organizations. Your affiant knows that drug traffickers frequently have access to, and often utilize, numerous cellular phones, often at the same time in an effort to avoid the lawful monitoring of their drug-related conversations by law enforcement. Some drug traffickers use phones dedicated to drug trafficking and gang related activities, and other "clean" phones which they use for their otherwise legitimate activities. I know that drug traffickers and gang members routinely use pre-paid phones requiring no subscriber information, and even use fictitious names, or the names of others, to register the cellular phones used to advance their unlawful activities.

3. As a SA, your affiant has participated in several investigations involving drug trafficking organizations, and have authored three Federal Title III wire intercepts. Pursuant to my participation in those investigations, your affiant has performed various tasks which include, but are not limited to: (a) functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of drugs and the use of monetary instruments to launder drug proceeds; (b) functioning as a surveillance agent, and thereby observing and recording movements of persons trafficking in drugs and those suspected of trafficking drugs; (c) interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs; (d) participating in the tracing of monies and assets gained by drug traffickers from the illegal

sale of drugs; and (e) participating in investigations involving the purchase of controlled substances, the execution of search warrants, surveillance in connection with narcotic investigations, and interviews of confidential sources.

4. Through my investigations, my training and experience, and discussions with other law enforcement personnel, I have become familiar with the tactics and methods employed by controlled substance traffickers to smuggle and safeguard controlled substances, distribute controlled substances, and collect and launder the proceeds from the sale of controlled substances. These methods include, but are not limited to: the use of wireless communications technology, such as cellular telephones and prepaid cellular accounts; counter surveillance; false or fictitious identities; and coded or vague communications in an attempt to avoid detection by law enforcement.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officials, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and criminal complaint and does not set forth all of my knowledge about this matter.

6. This affidavit is submitted to support a criminal complaint and application for an arrest warrant for and against Jose David ESCATEL-VILLASENOR.  I submit probable cause exists to believe that, on or about October 19, 2023, in the State and District of Colorado, Jose David ESCATEL-VILLASENOR, did knowingly and intentionally possess with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of n-phenyl-n-[1-(2phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi).

## FACTS IN SUPPORT OF PROBABLE CAUSE

7. The United States, including the DEA, is conducting a criminal investigation of a multinational, multistate, drug trafficking organization (DTO) that is responsible for committing violations of the Subject Offenses.

8. Since February of 2022, the DEA Casper Wyoming Post of Duty (POD), DEA Denver, Colorado Rocky Mountain Field Office (RMFD), DEA Colorado Springs Residence Office (CRSO) and DEA Las Vegas District Office (LVDO) have investigated this DTO, which primarily distributes large amounts of methamphetamine, heroin, cocaine and fentanyl. Fentanyl is primarily mixed into fake 30 mg Oxycodone pills, better known on the streets as "blues."

9. Since February of 2022, investigators within the DEA Denver Office have seized in excess of 19 kilograms of methamphetamine, 29 kilograms of fake oxycodone pills (containing fentanyl), 16 kilograms of heroin, 4 kilograms of cocaine, multiple firearms, and U.S. Currency (believed to be drug proceeds) directly attributed to this DTO.

10. The cell-head, or person responsible for the Denver, CO and Colorado Springs, CO distribution region of this DTO has been identified as Jorge Luis AVALOS-LOPEZ a/k/a Leo RIOS-LUCERO (hereafter referred to as "RIOS-LUCERO") . RIOS-LUCERO has been identified as residing at 10251 Zuni Street, G101, Federal Heights, CO.  RIOS-LUCERO, with the assistance of co-conspirators, regularly receives shipments of fake 30 mg Oxycodone pills (containing fentanyl), cocaine, heroin and methamphetamine via interstate drug couriers.  These drug couriers routinely drive from the southwest border of the United States and deliver drugs to Las Vegas, NV and Denver, CO.  Once these shipments are received in the Denver, CO region, RIOS-LUCERO takes the drugs and places them into stash locations such as apartments and storage facilities in the Denver, CO and Colorado Springs, CO areas.  RIOS-LUCERO then

utilizes co-conspirators (drug runners/stash house operators) to divide and package the drugs and to also deliver the drugs to customers in the above noted areas. Once payments are received for the sale of the drugs, drug runners eventually compile all drug proceeds and transfer those proceeds to RIOS-LUCERO. RIOS-LUCERO, and his spouse, Alejandra ARVIZU-ARCADIA, then utilize Colorado based Money Service Businesses (MSBs) to illicitly transfer drug proceeds back to individuals in the Republic of Mexico.

11. Agents have utilized a multitude of investigatory techniques ranging from federal wiretaps, search warrants, court orders, administrative and grand jury subpoenas, physical and electronic surveillance, trash searches, surreptitious CCTV cameras, law enforcement and public records database searches, interviews, and undercover (UC) controlled purchases, etc.

12. Investigators continued to target RIOS-LUCERO and numerous other co-conspirators, including a drug runner only known at the time as "Borregas," operating for and on behalf of the RIOS-LUCERO DTO. Investigators identified Borregas as residing at 25 Sommerlyn Road, Apartment #6-609, Colorado Springs, which was believed to be a drug stash location where two additional individuals, besides Borregas, were believed to reside.

13. This eventually culminated with an October 19, 2023 operation targeting the drug operations of RIOS-LUCERO and other co-conspirators and locations. Five search warrants were executed on this date, targeting apartments and storage units associated to the DTO, including at 25 Sommerlyn Road, Apt. #6-609, Colorado Springs, CO. The search warrant for 25 Sommerlyn Road, Apt. #6-609, Colorado Springs, CO was authorized by the Hon. Michael E. Hegarty of the United States District Court, District of Colorado on October 17, 2023.

14. Upon execution of the search warrant at 25 Sommerlyn Road, Apt. #6-609, Colorado Springs, CO, investigators identified two occupants from inside the apartment including Jose David ESCATEL-VILLASENOR a/k/a Emilio GARCIA-MAGANA a/k/a "BORREGAS").

15. During a search of the apartment, the following items were located with some of the items collected as evidence:

SEARCH OF THE KITCHEN

- $7,508.00 U.S. currency (Exhibit N-192) located inside a Pepsi box on top of the refrigerator in the kitchen.
- Additionally, inside the Pepsi box, there was U.S. currency within suspected packages of meth (Exhibit 75), heroin (Exhibit 74), cocaine (Exhibit 73), and blue pills (suspected fentanyl) (Exhibit 68).
- Indicia papers along with a drug ledger inside a Pepsi box above the kitchen fridge (Exhibit N-203).
- In the kitchen cabinet above the sink, a zip-lock style bag containing a green leafy substance, suspected to be marijuana (Exhibit 76).
- Drug ledgers and indicia paperwork in the same kitchen cabinet (Exhibit N-201).
- Under the kitchen range, behind the bottom drawer, two large packages of suspected narcotics. One packaged appeared to be cocaine (Exhibit 73) and the other package was tightly wrapped in black electrical tape, suspected to be heroin (Exhibit 74).
- A pressure cooker that contained suspected fentanyl, heroin, and meth inside a kitchen closet. (Note: The suspected narcotics found in the pressure cooker were packaged together with the Exhibits found on top of the fridge and under/behind the kitchen range).

SEARCH OF ESCATEL-VILLASENOR'S ROOM (identified as his room by ESCATEL-VILLASENOR)

- $2,411.00 U.S. currency (Exhibit N-193) within a zip lock style bag containing suspected fentanyl (blue pills) (Exhibit 69), meth (Exhibit 72), heroin (Exhibit 71) and cocaine (Exhibit 70) on a closet shelf.
- A drug ledger (Exhibit N-202) within Exhibit N-193 and Exhibits 69-72.
- A drug ledger (Exhibit N-204) on the closet floor.
- Black Samsung cell phone (Exhibit N-197) next to the air mattress on the floor.

SUBJECT INTERVIEWS

16. TFO Lionel Kahan later spoke with Jose David ESCATEL-VILLASENOR a/k/a BORREGAS. ESCATEL-VILLASENOR was informed of the investigation and was read his Miranda Advisement per issued card. ESCATEL-VILLASENOR declined to speak with TFO Kahan regarding the investigation. (NOTE: During the contact, ESCATEL-VILLASENOR identified himself to TFO Kahan as Emilio GARCIA-MAGANA).

17. ESCATEL-VILLASENOR signed a form acknowledging ownership of the $2,411.00 U.S. currency found in his room. Based on training and experience, your affiant believes all of the currency seized from the apartment is drug proceeds.

18. TFO Kahan and SA Sapp transported the suspected drugs seized from inside 25 Sommerlyn Road, Apt. #6-609, Colorado Springs to the DEA Rocky Mountain Field Division. On October 23, 2023, SA Atwell and Bolton field tested Exhibit 69, the suspected fentanyl M/30 pills using a *Detectachem* test, which tested presumptive positive for the presence of fentanyl and it weighed approximately 373.2 grams.   Based

on your affiant's training and experience, exhibits 66, 67, and 68 also appear to be fentanyl, but they were not field tested (nor were the other drug exhibits). Aggregating exhibits 66, 67, 68, and 69, your affiant believes the total gross weight of suspected fentanyl M/30 pills seized from Apartment #6-609 is 1,351.3 grams.

19. Following the search warrant, ESCATEL-VILLASENOR was taken into ICE custody where he is currently being housed on immigration violations.

## CONCLUSION

20. Based on the facts set forth above, I submit probable cause exists to believe that, on or about October 19, 2023, in the State and District of Colorado and elsewhere, Jose David ESCATEL-VILLASENOR, did knowingly possess with the intent to distribute 40 grams and more of a mixture and substance containing a detectable amount of n-phenyl-n-[1-(2phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi). Therefore, I respectfully request the issuance of an arrest warrant and criminal complaint charging the same.

I, Myshell Bolton, being duly sworn according to law, depose and say that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

*s/Myshell Bolton*
Myshell Bolton
Special Agent, DEA

Submitted, attested to, and acknowledged by reliable electronic means on November __3__, 2023.

Hon. Scott T. Varholak
United States Magistrate Judge

**Affidavit reviewed and submitted by Candyce Cline, Assistant United States Attorney.**

| | |
|---|---|
| DEFENDANT: | Jose David ESCATEL-VILLASENOR |
| YOB: | 1993 |
| OFFENSE(S): | COUNT 1: 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi), Possession with Intent to Distribute 40 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl, a Schedule II Controlled Substance, |
| LOCATION OF OFFENSE: | El Paso County, Colorado |
| PENALTY: | COUNT 1: NLT 5 years and NMT 40 years imprisonment, NMT $5,000,000 fine, or both; NLT 4 years and NMT life supervised release; $100 special assessment fee |
| AGENT: | DEA Special Agent Myshell Bolton |
| AUTHORIZED BY: | Candyce Cline<br>Assistant U.S. Attorney |

ESTIMATED TIME OF TRIAL:

   X   five days or less         over five days         other

THE GOVERNMENT

   X    will seek detention in this case pursuant to 18 U.S.C. § 3142(f)(1)(C) and (2)

The statutory presumption of detention **is** applicable to this defendant pursuant to 18 U.S.C. § 3142(e)(3)(A).